OPINION OF THE COURT
Albert J. Emanuelli, S.
In this final executor’s accounting proceeding two issues are before the court. The first issue is whether the language of the charitable bequests contained in article third (A) and (B) of the will confers a pecuniary or fractional bequest upon the charities. The executor computed the charitable bequests as pecuniary legacies. Consequently, the charities do not share in estate income or appreciation in estate assets. The second issue is whether estate taxes should be apportioned pursuant to EPTL 2-1.8 or paid as a general expense of administration without apportionment. The executor charged the estate tax as a general expense of administration thereby reducing the charitable bequests by a proportionate share of the estate tax and depriving the charities of the full benefit of the charitable estate tax deduction. Objections were filed by a charitable residuary beneficiary and the Attorney-General to the calculation of the charitable bequests. The petitioner, Princeton Bank and Trust Co., N. A. moves to dismiss the objections. The respondents cross-move for summary judgment.
Article third of the will states:
"A) I give and bequeath an amount equal to twenty per cent of the value of my residuary estate to Bonnie Brae, a charitable corporation organized and existing under the laws of the State of New Jersey, and located in Millington, New Jersey for its general uses and purposes.
”B) In memory of my beloved wife, Theresa E. Newell, I give and bequeath an amount equal to twenty per cent of the value of my residuary estate to United Hospitals Medical Center now or formerly located at 15 South Ninth Street, Newark, New Jersey, for its general uses and purposes.
"Q All the rest, residue and remainder of my estate, including any lapsed legacy, devise or bequest, wheresoever situate of every kind and character, of which I may die seized or possessed or to which I may in any manner be entitled to at my death, all of which property is herein called by residuary estate, I give, devise and bequeath to my trustee hereinafter *987 named, in trust. The Trustee shall divide the Trust fund into shares and create separate Trusts as follows: [the testator thereafter created three trusts of 50%, 25% and 25% of the residuary for his sister, nephew and godchild].”
Defining the charitable bequests as pecuniary or fractional is important in two respects. If pecuniary, the charities are not entitled to income nor would they share in the appreciation or depreciation of estate assets (Matter of Gilmour, 18 AD2d 154; Matter of Epping, 29 AD2d 410; EPTL 11-2.1 [d] [2]). Fractional bequests on the other hand share in both income and fluctuations in value.
There are many reported decisions which focus on the language used to create the devise as an important factor in discerning the nature of the bequest. Thus, words such as "an amount” or "a sum” have been historically construed to indicate a testator’s intention to make a pecuniary disposition (Matter of Lewine, 55 Misc 2d 734; Matter of McKee, 132 Misc 2d 562; Matter of Epping, supra; Matter of Gutwirth, 53 Misc 2d 699). On the other hand, words such as "a part”, "a portion” or "a share” have generally been associated with fractional bequests (Matter of Bing, 23 Misc 2d 326; Matter of Mueller, 34 Misc 2d 584). However, such constructional preferences cannot be employed in a vacuum.
In the construction of wills, the function of the court is to ascertain and give effect to the intention of the testator, not from a single word or phrase but from a sympathetic reading of the document in its entirety. (Matter of Gustafson, 74 NY2d 448; Matter of Thall, 18 NY2d 186.) If the words employed when read in their natural and generally accepted sense indicate an intention to credit the beneficiaries interest with a ratable share of the appreciation and depreciation of assets, the bequest is fractional and reasons should not be contrived to justify a contrary determination (see, Matter of Lewine, supra).
The language used in the instant case has been described in other contexts as a classic example of a pecuniary bequest determined by means of a formula stated in the instrument (Matter of Lewine, supra; EPTL 2-1.9 [a] [1]). Indeed, the definition of a pecuniary legacy includes formula type bequests (EPTL 2-1.9 [a]). However the significant element of this will which distinguishes it from other pecuniary bequest formulas is not the fraction but that against which the fraction applies (Matter of McKee, 132 Misc 2d 562, supra). Here *988 the charitable bequest is a product of the value of the residuary estate, which is generally accepted and understood by attorneys and laymen as including the appreciation and depreciation of estate assets (Matter of Heslin, 70 Misc 2d 292). Had the decedent intended to give the charities a pecuniary legacy of a percentage of the value of his estate at date of death, there are many phrases he could have employed to convey that intent. For example, in Matter of Gutwirth (supra), involving a pecuniary bequest of "fifteen (15) percent of my net adjusted gross estate” (at 700) the court noted "[t]he term 'adjusted gross estate’ is tax language which has acquired a definite meaning to lawyers and to laymen alike and is indicative of the testator’s intent to fix the gift to charity by a simple computation before the value of his residuary estate could be ascertained” (at 702 [emphasis added]). Likewise, a bequest of "fifty (50%) percent of * * * my total gross estate as computed and finally determined in the Federal Estate Tax proceeding on my estate” clearly describes a pecuniary bequest of a percentage of the date of death value of the estate (Matter of Gauff, 27 Misc 2d 407, 408-409). Had the testator intended to describe a pecuniary bequest of a percentage of the date of death value of his estate, he could have used these or similar phrases to define the value and thereby avoid any uncertainty. Instead, the testator described the multiplicand by specifically using the one phrase, "the value of my residuary estate”, which conveys precisely the opposite meaning in that the term "residuary estate” is generally understood to include gains and losses on estate assets (Matter of Heslin, supra).
The location of the bequest within the instrument is also an important consideration (Matter of Gutwirth, supra). Although the residuary clause is set forth in subparagraph (C) of article third, the thrust of article third is to bequeath the entire residuary estate: 40% to the charities and 60% to the family. "[W]hen the bequest is made out of the residuary estate * * * the court can with some degree of certainty say that a 'fractional’ gift was intended because the size of the gift is not ascertainable until * * * the final accounting has been filed” (Matter of Gutwirth, supra, at 701).
Petitioner’s final contention that the testamentary plan indicates a dominant purpose to benefit the family members is misplaced. A 60/40 split between family and charities in a $5 million estate is not so disproportionate as to confer preferred status upon either class of beneficiaries. Indeed, each charity *989 receives a larger percentage of the estate than two of the three family members and no one family member receives more than the combined bequest to charity.
Constructional aids are merely preferences which guide the court but do not dictate the outcome where a different result is clearly indicated by other considerations. A pecuniary disposition is a bequest of a specific amount of money whether expressly stated in the instrument or determinable by means of a formula (EPTL 2-1.9 [a] [1]). The word amount is often associated with pecuniary dispositions because it too connotes a fixed or readily ascertainable value. These concepts however are inapposite to a bequest described as a fraction of the residuary estate which by its very nature is an ever changing amount. In this regard, the court subscribes to the notion as stated in Matter of Gutwirth (supra) that a fractional gift is intended when the size of the gift is not ascertainable until the final accounting. This is precisely the nature of the charitable bequests at hand.
Accordingly, the court holds that the dispositions in article third (A) and (B) are fractional bequests and that the word "amount”, which carries a particular connotation in other contexts (Matter of Lewine, supra; Matter of McKee, supra; Matter of Gutwirth, supra; Matter of Epping, supra) does not in this instance convey an intent to bequeath a pecuniary legacy.
The second issue in this case concerns the proper apportionment of estate taxes between the charities and the family members. The charities argue in favor of an apportionment pursuant to EPTL 2-1.8 that will preserve the charitable bequests at a maximum level undiminished by estate taxes. The executor on the other hand construes article seventh of the will as a direction against apportionment and has computed and paid the estate tax as a general expense of administration prior to the computation of the charitable and residuary shares.
Our present tax apportionment statute, EPTL 2-1.8, provides in pertinent part:
"(c) Unless otherwise provided in the will or non-testamentory instrument:
"(1) The tax shall be apportioned among the persons benefited in the proportion that the value of the property or interest received by each such person benefited bears to the total value of the property and interest received by all persons *990 benefited, the values as finally determined in the respective tax proceedings being the values to be used as the basis for apportionment of the respective taxes.
"(2) Any exemption or deduction allowed under the law imposing the tax by reason of the relationship of any person to the decedent, the fact that the property consists of life insurance proceeds or the charitable purposes of the gift shall inure to the benefit of the person bearing such relationship or receiving such insurance proceeds or charitable gift, as the case may be.”
In juxtaposition to the statutory scheme of "burden-on-the-recipient”, article seventh of the will provides: "I direct that all estate, inheritance, succession, transfer or death taxes imposed by any jurisdiction and becoming due by reason of my death with respect to any assets required to be considered in computing such taxes, together with any interest or penalties thereon, and whether or not such assets pass under this will shall be paid from my estate and deducted therefrom in order to determine the value of my residuary estate without any apportionment thereof.”
In support of its motion to dismiss the objections, the executor submits an affidavit by one of its trust officers describing a conversation with the decedent. The evidence is extrinsic to the will and is offered to establish decedent’s intent. The petitioner is keenly interested in the outcome of this issue since it has paid an estate tax which it may not recover if its interpretation of the tax apportionment clause is found to be incorrect. The affidavit describes a transaction with the decedent as related by a party in interest that is clearly within the scope of CPLR 4519 and is inadmissible to support a motion for summary judgment (Phillips v Kantor & Co., 31 NY2d 307, 313). In any event the affidavit is irrelevant since the court finds that there is no ambiguity to resolve requiring the introduction of extrinsic evidence (Matter of Cord, 58 NY2d 539; Matter of Ragone, 58 NY2d 864; Matter of Lindley, 22 Misc 2d 9), and has not been considered by the court.
A direction by the testator that all estate taxes "be paid from [his] estate and deducted therefrom in order to determine the value of [his] residuary estate without any apportionment thereof’ is an unequivocal expression of intent that estate taxes be paid from the residue as a general expense of administration without apportionment among those who share *991 in the residuary. It is not a question of which class of beneficiaries the word apportionment applies to since the quoted language is not directed to a class of beneficiaries. Rather, the language describes a formula for calculating the "value of the residuary” which pursuant to the scheme of article third of the will, is the source from which all residuary shares are derived. Simply stated, each charity is bequeathed 20% of the value of the residuary which is defined in article seventh as net of estate taxes.
Courts have historically construed EPTL 2-1.8 to require apportionment among those benefiting from the estate unless there is a "clear and unambiguous” direction to the contrary (Matter of Pepper, 307 NY 242; Matter of Shubert, 10 NY2d 461; Matter of Mills, 297 NY 1012). "In case of doubt as to what the will means on the subject of taxes the statutory direction to apportion is absolute” (Matter of Mills, 189 Misc 136, 141). However, EPTL 2-1.8 itself does not contain any canon of construction but simply provides for apportionment of estate taxes among all testamentary and nontestamentary gifts unless the testator’s will directs otherwise (Matter of Kindermann, 21 NY2d 790). Draftsmen have shown no lack of ingenuity in composing tax nonapportionment clauses with varying degrees of success. However, no one formula or phrase should be treated as a sole alternative to the EPTL (Matter of Robbins, 144 Misc 2d 510). What this court looks for is clarity of purpose or intent. What the court finds in this case is a definitive statement of intent that estate taxes should be paid off the top as an expense of administration without apportionment. To hold otherwise requires á strained reading of the clause which violates fundamental rules of construction.
Words are to be accorded their plain meaning and should not be construed out of the will to suit some present purpose (Matter of Robbins, supra). Ascertainment of the testator’s intent is to be gleaned, if possible, from within the four corners of the will itself (Matter of Jones, 38 NY2d 189). Since the only beneficiaries of the estate are those who share in the residuary, the application of the formula is self-evident. The charitable shares are computed on the value of the residuary estate net of estate taxes (see, Matter of Bellinger, 27 NY2d 873).
*992 The motion and cross motion are granted to the extent that the charitable bequests are deemed to be fractional bequests of a percentage of the value of the residuary estate after deduction for estate taxes and are denied in all other respects.
The account shall be amended in accordance with this decision.